PLEASANT M. COMPTON, plaintiff in error, *vs.* JAMES CASSADA, defendant in error.

1. The mere verbal declarations of C., in whom vests the legal title for a lot of land, that I., with another, are interested with him in that and other lots—that this lot, and others, were bought by him on speculation, and that I. and another had an interest with him in the lots as partners, are not sufficient to pass the title, legal or equitable, to one of the lots, out of C., and vest it in I., or his assigns.

2. If one sell and convey land, in his individual name, such sale and conveyance will not pass the title of one for whom he may be authorized to sell such land.

3. The recollection of one witness that he had seen a letter from C. to I., authorizing I. to sell a lot of land for him at a particular price, which letter has been lost, is too imperfect and uncertain to justify and protect a sale and conveyance by I, as the agent of C.

4. A continuance will not be allowed on account of the absence of papers, etc., caused by change of counsel, or the neglect of the client to attend to his case.

In equity, in Fannin Superior Court. Tried before Judge RICE, at the October Term, 1860.

This was a bill in equity, filed by James M. Cassada, against Pleasant M. Compton, alleging that said Compton, Russell Cannon, and John Jones, were partners in granting reverted lands, located in the Cherokee purchase of Georgia; that complainant can not set forth the precise terms of such partnership; that amongst divers lots of land, granted under said partnership agreement, was lot of land No. 123, in the 8th district of originally Cherokee, then Gilmer, and now Fannin county; that according to the partnership agreement, the grants to all the land granted as aforesaid, were issued in the name of Compton alone; that a distribution or division of the lands granted aforesaid, was had between the said Compton, Cannon and Jones, in which division the lot of land aforesaid fell to Jones, and that Compton, although holding the legal title, held it as the trustee of Jones, and wrote to Jones that, at any time he could make sale of said lot; that he, Compton, would execute a deed of conveyance to Jones, or to any one else that he might direct; that under

these circumstances, Jones sold the land to John Cassada, and executed a bond to make titles to the same, receiving from Cassada the sum of fifty dollars, the purchase price agreed on, and also showing to said John Cassada the letter of Compton, directing Jones to sell the land, and promising to make a deed either to Jones or to any one that he might direct; that afterwards John Cassada sold the land to complainant, receiving payment therefor, and assigning to complainant Jones's bond; that afterward, Jones exhibited the said letter of Compton to complainant, and made complainant a deed, and took up his bond for titles; that under this purchase, the complainant, in good faith, entered upon the land, cleared and enclosed the same, placed buildings and other valuable improvements thereon, increasing the value of the land to the sum of $500 00; that Compton was aware of the purchase of the land, and the circumstances under which he purchased it, and the improvements placed upon it, and interposed no objection thereto; that Cannon has received his full share of the lands granted under the partnership agreement, and has no further interest in the land, and that Jones has removed to California, and is insolvent, and unable to respond to complainant on the warranty in his deed, and if he was, the damages in an action on the warranty would not compensate complainant for the improvements placed upon the land; Compton has been applied to for a deed, and refused to make it, but on the contrary, has commenced an action of ejectment against complainant for the land.

The bill prays a discovery; and that Compton may be compelled to make complainant a deed; and that the action of ejectment be perpetually enjoined.

Compton filed his answer to the bill, in which he states: That between himself and Cannon there was a partnership like that alleged in the bill, under which lands were granted, and among them the lot in question; that the grant fees were paid by defendant, and Cannon afterward released his interest to defendant, whereby he was the sole and entire owner of the land; that Jones never was connected in any manner with, or had any interest in, the lands granted,

either as partner or otherwise; that the facts in relation to the letter written by defendant are: that Jones knowing that defendant was the owner of the land, opened a negotiation with defendant for the purchase thereof, and defendant replied by writing to him that his price for the land was $160 00, and that he was willing to convey it for that sum, to Jones, or any one else he might name; that he admits the sale by Jones to John Cassada, and by John Cassada to complainant, as well as the pendency of the action of eject-ment, but denies that the improvements put upon the land were with the authority of defendant, or induced by any act or word of his, but put there foolishly by complainant, under a purchase from one who had no interest in the land.

When the case was called for trial a motion was made to continue the same, by the defendant.

The motion was based upon statements made by William Martin, one of the defendant's counsel, that the defendant resided in Milledgeville, at a great distance from the Court, and had confided the management of the case to his counsel; that the counsel originally employed by defendant had ceased to attend the Court, and that he, Martin, was but recently employed, to-wit: awhile before the last term of the Court; that he was informed and believed, that Abda Johnson, former counsel of defendant, had in his possession certain letters, written by John Jones to defendant, before defendant wrote to him, by which he expected to show that Jones did not claim the land, but recognized defendant as the owner; that the defendant's counsel had been changed three or four times, and that he, Martin, had not had time or opportunity to obtain the letters.

This motion to continue was overruled by the presiding Judge.

On the trial, complainant, after accounting for the non-production of the originals, proved the contents of two letters, written by defendant to John Jones, in the year 1849 or 1850, authorizing him to sell certain lands in Fannin county, amongst which was the lot in dispute; that in both letters, a price was mentioned, which the witness did not

recollect; that Cannon and Jones both said, that they and defendant were in partnership in granting lands, the terms of which were: that Cannon and Jones were to furnish numbers, and defendant was to take out the grants, and that Cannon and Jones were to refund their part of the grant fees, and the land was to be equally divided between the three; that Jones did furnish numbers, the land in dispute being one, and that Jones had frequently dealt in lands as partner of defendant.

The complainant also proved, by three witnesses, that defendant said that he and Cannon and Jones had granted lands in partnership, Jones and Cannon furnishing numbers, and he taking out the grants, and that the lands were to be divided after the grant fees were returned; to two of the witnesses, Compton said, that he had authorized Jones to sell the lot in dispute, and that he could not sell it until he heard from Jones.

It was also proven by complainant, that he had gone into possession of the land, and made valuable improvements.

The grant to Compton, and the deed from Jones to Cassada, were also in evidence.

Pending the trial, complainant's counsel tendered to defendant's counsel $9 50, with interest, as Jones' part of the grant fee, which, after remaining a short time on the table, and not being taken up by defendant's counsel, was taken back by complainant's counsel.

When the testimony closed, counsel for defendant requested the Court to charge the jury:

"That if defendant authorized Jones to sell the land at a specific price, and the money to be paid to Compton, Jones could not bind Compton by selling at a less price."

The Court refused so to charge.

The jury found for the complainant, and counsel for defendant moved for a new trial, on the grounds:

1st. Because the Court erred in refusing the continuance moved for by defendant's counsel.

2d. Because the Court erred in refusing the charge requested by defendant's counsel.

3d. Because the jury found greatly against the weight of evidence.

The new trial was refused, and that refusal is the error assigned in this case.

FAIN & MARTIN, (by Eazzrd,) for plaintiff in error.

BROWN, (by Lester,) for defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

Pleasant M. Compton commenced an action for the recovery of lot of land No. 123, in the 8th district, second section of originally Cherokee, now Fannin county, against James M. Cassada, the tenant in possession, pending which, Cassada filed a bill in equity to enjoin said action for relief against the same, in which he alleged that Compton, one Russell Cannon and John Jones, granted this lot, with others, in partnership, the grant to which was taken out in the name of Compton. That subsequently, a division, by agreement, was had between the parners, and this lot, with another, fell to the share of John Jones, and Compton continued to hold the title thereto in his name, as naked trustee for the use of Jones, but agreed to make titles for said lot, to whomsoever he, Jones, might sell the same, and that Compton had written him (Jones) a letter, stating his willingness to make a title to him, or his assigns, as said lot belonged to him, Jones; that if Jones desired to sell said land, to do so at any time, and that he, Compton, would make a deed for the same to Jones, or his vendee. That the letter has been lost. The bill further alleges, that Jones, on the faith of this letter, which he exhibited, sold the lot to John Cassada for fifty dollars, and gave his bond for titles, which bond John Cassada transferred to James M. Cassada, the complainant, and Jones subsequently made his deed, and took up that bond. The bill asks for discovery from Compton, a perpetual injunction as to the action of ejectment, and that Compton be decreed to execute his deed to the complainants for the lot in controversy.

Compton *vs.* Cassada.

Compton, by his answer, denied that the lot, or any other, was granted to him as a partner of Jones and Cannon, but that it was granted to him on an understanding with Cannon, that he was to have an interest, but that Jones was no party or privy to such understanding or agreement; that his name was unknown to him in that or any other connection until long afterwards; that Cannon had remitted to him all his interest or claim in this and all other lots; and that he, the complainant, became the exclusive owner of the equitable, as he was of the legal, title; that he never wrote to Jones any such letter as that stated in the bill; on the contrary, Jones had written him, proposing to purchase the land, and that he replied that he would convey the land on the payment to him of the sum of $160 00; that he has written no other, or to any other purport.

The parties, being thus at issue, went to trial on the equity cause, at the October Term, 1860, of Carroll Superior Court. Complainant proved by E. W. Chastain that he heard Compton say that Jones and Cannon had furnished him with the number of this lot and others; that they were all interested, and he had authorized Jones to sell this lot, and would not sell it until he heard from Jones; by B. F. Chastain that he heard Compton say that Cannon and Jones furnished him with this number and others; that they were to have the lots on speculation, and that he had authorized Jones to sell this and the Neal lot; that defendant had gone into the possession, and made improvements on the lot. John B. Chastain proved that Compton told him that Jones and Cannon were to have an interest in the lot; that Jones had no right to sell the lot, he had paid nothing; Compton was to furnish money and grant the land, Jones and Cannon were to furnish numbers, and refund the money. Complainant proved further by Samuel Jones, the father of John Jones, that he was acquainted with the handwriting of Compton, and had seen two letters from Compton to his son, John Jones, authorizing John Jones to sell the lot in controversy and another, at specific prices, which he does not recollect; the letter said nothing about a partnership in the lands that he recollects,

VOL. XXXII—28.

though his son had told him that such a partnership did exist. The letters were lost while in his possession, or that of his wife, for safe keeping.

The complainant also put in evidence a quit-claim deed from John Jones to himself for this lot of land, dated 20th October, 1850.

1. On this evidence the jury rendered a decree for the complainant, and Compton moved for a new trial, on the ground, amongst others, that the finding was against the evidence and the weight of the evidence. The Court overruled the motion, and that is the only question brought here for review. Was the verdict against the evidence? We are clear that it was. The legal title to the lot was, as shown by the plat and grant dated in 1846, which was before the jury as evidence, in the defendant, Pleasant M. Compton, and nothing was shown to legally take that title, legal or equitable, out of him. There is no evidence to show title in Jones, or an interest even. It is true that the Chastains testify that Compton said that Jones had an interest in the lot, but titles to land can not be created by mere verbal declarations of this character without overturning the statute of frauds.

2. If it be said that Jones had authority to sell, the reply is, that he did not sell the lot as that of Compton's, nor so convey; nor did he sell and convey the lot as Compton's agent, but he sold and conveyed the land as his own. A sale so made by one, although he might have power to sell for another, passes nothing but the title of himself, and not that of his principal. Had he attempted to convey as Compton's agent, his authority must have been shown, or better proven than it was, and that he had pursued his instructions.

3. The letters of Compton to Jones, as testified to by Samuel Jones, if such letters ever existed in fact, amount only to a limited authority to sell, and the witness's recollection of the contents was too imperfect, and the evidence itself too uncertain, to form a basis for a title to land, so as to authorize the Court to act upon it, although the instructions might have been observed.

We think that the Court should have sustained the motion

for a new trial, on the ground that the verdict was against the evidence. The complainant was not entitled to a decree on the case made.

We agree with the Court in refusing to charge as requested, there being no evidence to authorize it.

4. The motion for a continuance was properly refused. A party must not be delayed in a trial by the change of counsel or the neglect of the other party to attend to his cause.

Let the judgment be reversed.